UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MARLO U. MORALES,**

      **Plaintiff,**

  v.                                    Case No. 18-CV-1967

**CHRIS J. RAUCH,**

      **Defendant.**

## DECISION AND ORDER

Plaintiff Marlo U. Morales, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. Magistrate Judge David E. Jones, to whom this case previously was assigned, screened the complaint and allowed Morales to proceed on Eighth Amendment and state-law claims against Dentist Chris J. Rauch. (ECF No. 9.) The case was reassigned to this court after Judge Jones resigned. All parties consented to the jurisdiction of this court. (ECF Nos. 21, 23.)

The court extended the deadline for filing dispositive motions to February 20, 2020. (ECF No. 22.) On that date Dr. Rauch moved for summary judgment. (ECF No. 24.) Morales opposes the motion and, four months after the dispositive motion deadline had elapsed, filed his own motion for summary judgment. (ECF Nos. 36–38.) The motions are fully briefed and ready for resolution.

## BACKGROUND

The facts in this section are taken from Dr. Rauch's proposed findings of fact and declaration in support. (ECF Nos. 26–27.) Morales responded to Dr. Rauch's declaration and proposed findings of fact. (ECF Nos. 36–37.) He did not separately submit his own proposed findings of fact. The court will consider each party's proposed facts only to the extent they are supported by evidence in the record and will deem admitted any facts that a party has not properly contested. *See* Fed. R. Civ. P. 56(c)(1); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). The court will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts. *See* Civil L. R. 56(b)(6).

Morales did not file his motion for summary judgment until June 24, 2020—more than four months after the deadline for filing dispositive motions. (ECF No. 38.) The court granted Morales extensions of time to respond to the defendant's motion for summary judgment; it did not give him additional time to file his own motion. Because Morales's motion is late, and Morales provides no explanation for his untimely filing, his motion for summary judgment is **DENIED**.

Morales also submitted several documents and exhibits in support of his motion for summary judgment. (ECF No. 39.) As the defendant notes, these documents largely respond to the defendant's motion. (ECF No. 41 at 2.) The court

will consider Morales's documents and exhibits with his response to the defendant's motion for summary judgment.

### A. The Parties

Morales has been an inmate at Redgranite Correctional Institution ("RGCI") since October 15, 2014. (ECF No. 26, ¶ 1.) He previously was incarcerated at New Lisbon Correctional Institution ("New Lisbon"). (*Id.*, ¶ 2.) Dr. Rauch is the sole dentist at RGCI. (*Id.*, ¶¶ 3–4.)

### B. Morales's Complaint

Because Morales's complaint is verified, the court will treat it as "the equivalent of an affidavit" for purposes of this decision. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996).

Morales's complaint states that "the Dentist of this Institution RGCI," presumably Dr. Rauch, denied him dental treatment and misled Morales to believe that the dentist was unable to order a toothpaste that Morales believed could treat his gum disease. (ECF No. 1 at 2.) Morales states that the canteen stopped selling "Colgate Total Clean Mint toothpaste," which contains triclosan to treat gum disease. (*Id.*) On February 20, 2018, Morales requested the toothpaste from the dentist, who responded that he was unable to decide what products were sold at the canteen. (*Id.* at 2–3.) Morales asked the business office about the toothpaste but was told that the vendor had discontinued it. (*Id.* at 3.) The business office told Morales to contact his dentist to request an alternative toothpaste. (*Id.*) Morales again contacted the dental office, which responded that the specific treatment Morales sought was unavailable

3

to inmates at Wisconsin prisons. (*Id.*) The dentist recommended that Morales practice good dental hygiene. (*Id.*) Morales insists that another treatment was available for his gum disease and asserts that the dentist's treatment was negligent. (*Id.* at 4–7.)

Judge Jones permitted Morales to proceed under the Eighth Amendment on his claim that Dr. Rauch was deliberately indifferent to treating Morales's gum disease. (ECF No. 9 at 6–7.) Judge Jones also exercised the court's supplemental jurisdiction over Morales's state-law claim that Dr. Rauch provided negligent dental care. (*Id.* at 7.)

### C. Canteens at Wisconsin Institutions

The Wisconsin Department of Adult Institutions ("DAI") has several policies related to inmate life. DAI Policy 309.52.01 governs items available for purchase at prison canteens. (ECF No. 26, ¶ 7; ECF No. 27-4.) Among those items are personal hygiene supplies, including toothpaste and mouthwash. (ECF No. 26, ¶ 8.) The items available at each institution depend on what a vendor supplies, and the specific products available vary from month to month. (*Id.*) If an inmate wants a certain item added to the canteen, he can submit a request for that item to be reviewed by a "canteen committee" in Madison, Wisconsin. (*Id.*, ¶ 9.)

The canteen committee also reviews discontinued items and makes all decisions on adding items to canteen menus. (ECF No. 26, ¶ 9; ECF No. 27-4 at 2–3.) Policy 309.52.01(II)(C)(3) notes, however, that "[c]omplaints regarding canteen items, the vendor or the canteen process including product quality and delivery shall first be addressed at the facility level. Facilities shall contact the vendor directly to resolve

issues." (ECF No. 27-4 at 3.) Dr. Rauch states that he is not personally involved in determining what products are added or removed from the canteen menu. (ECF No. 26, ¶ 10; ECF No. 27, ¶ 26.)

### D. Dental Treatment at Wisconsin Institutions

DAI Policies 500.40.05 and 500.40.06 govern preventative dental hygiene services and routine dental treatments. (ECF No. 26, ¶ 11; ECF Nos. 27-2 & 27-3.) Pursuant to DAI Policy 500.40.05, inmates may request a dental cleaning once every twelve months or longer, depending on the demand at their institution. (ECF No. 26, ¶ 13; ECF No. 27-2 at 3.) DAI Policy 500.40.06 provides that institutions "shall make available only those routine dental treatment services necessary to meet the inmate patient's serious dental needs and to maintain the inmate patient's health during incarceration." (ECF No. 26, ¶ 14; ECF No. 27-2 at 1.)

Routine services, including cleanings and fillings, are elective and provided only on inmate request or when determined to be clinically appropriate by the treating dentist. (ECF No. 26, ¶ 15; ECF No. 27-2 at 3.) Routine services are provided on a priority basis after all urgent and essential dental needs have been treated. (ECF No. 26, ¶ 15; ECF No. 27-2 at 3.) Inmates are responsible for their own dental self-care between preventative hygiene appointments. (ECF No. 27-2 at 3; ECF No. 27-3 at 3.) Institutional dentists must follow DAI policies. (ECF No. 26, ¶ 12.) Dr. Rauch was not involved in drafting the policies and states that he does not know the reasons for the policies' limitations. (ECF No. 27, ¶ 20.)

5

Inmates must submit a Dental Service Request ("DSR") to contact the prison's dental clinic and receive dental services. (ECF No. 26, ¶ 16.) On each DSR the inmate can identify the services he seeks and explain the issue(s) he is having. (ECF No. 27, ¶ 9.) The institution's dentist triages the inmate's treatment priority, makes an entry in the inmate's chart, and assigns appointments based on priority. (ECF No. 26, ¶ 16.) Dentists place inmates on a waiting list depending on the service requested. (*Id.*, ¶ 17.) For example, the "routine" wait list is for cavities, broken filings, and teeth that are reparable and where a delay in treatment will not result in a health risk or discomfort. (*Id.*) A "teeth cleaning or hygiene" wait list is for services rendered by a dental hygienist, including annual or initial teeth cleanings. (*Id.*, ¶ 18.) According to Dr. Rauch, hygienists are the primary care providers of periodontal care, including treatment of gingivitis and periodontitis. (*Id.*) The "essential" wait list is for patients with chronic discomfort whose condition requires higher priority, including tooth extraction. (*Id.*, ¶ 19.) The "urgent" wait list is reserved for necessary same-day treatments, including jaw fracture or spread of an infection beyond the mouth. (*Id.*, ¶ 20.)

**E. Morales's Dental Care**

On June 10, 2010, while an inmate at New Lisbon, Morales received treatment for periodontitis, a serious form of gum disease. (ECF No. 26, ¶ 21; ECF No. 27-1 at 23.) The New Lisbon dentist noted Morales's severe periodontitis during exams on June 2, 2011, July 26, 2012, and November 13, 2013. (ECF No. 26, ¶ 22; ECF No. 27-1 at 19, 22–23.) Dental staff explained to Morales "about perio and mobility of teeth"

6

and provided nutritional counseling. (ECF No. 27, ¶ 29; ECF No. 27-1 at 23.) A hygienist at New Lisbon performed several scaling and root planning procedures to address Morales's periodontitis. (ECF No. 26, ¶ 23; ECF No. 27-1 at 18.) These procedures involve deep cleaning below the gumline to treat gum disease. (ECF No. 26, ¶ 23.)

On October 17, 2014, after Morales arrived at RGCI, Dr. Rauch reviewed his dental files, which indicated that Morales still showed signs of gum disease and decay. (ECF No. 26, ¶ 24; ECF No. 27-1 at 17.) Dr. Rauch sent Morales a notice of his conditions and recommended that Morales submit a DSR. (ECF No. 26, ¶ 24.) On January 27, 2015, Morales submitted a DSR for his annual cleaning. (ECF No. 27-1 at 51.) Dr. Rauch responded that, because Morales had received a cleaning on June 9, 2014, he would not be eligible for a cleaning until June 2015. (*Id.*) On January 30, 2015, Dr. Rauch placed Morales on the hygiene waitlist for his cleaning in June 2015. (*Id.* at 17.)

On June 2, 2015, Dr. Rauch conducted his first examination of Morales as part of Morales's annual dental cleaning. (ECF No. 26, ¶ 25; ECF No. 27-1 at 4.) Dr. Rauch noted that Morales had gingivitis, serious periodontitis, and a periodontal abscess that could lead to more tooth loss without treatment. (ECF No. 26, ¶ 26; ECF No. 27-1 at 4.) Dr. Rauch concluded that continuing the scaling and root planning procedures attempted at New Lisbon would not resolve Morales's advanced periodontitis. (ECF No. 26, ¶ 28.) Dr. Rauch states that he had no viable treatment options available within DAI policy limits to reverse Morales's periodontitis and prevent him from

7

losing more teeth. (*Id.*, ¶ 29; ECF No. 27, ¶ 35.) The available course of treatment was not curative and could only slow the spread of Morales' periodontitis by providing him with annual cleanings and instructing him to practice good dental hygiene. (ECF No. 26, ¶ 29; ECF No. 27, ¶ 35.) Dr. Rauch saw Morales for a follow-up appointment on July 13, 2015, during which he extracted one of Morales's teeth because of its poor condition. (ECF No. 26, ¶ 27; ECF No. 27-1 at 16.)

On June 14, 2016, Dr. Rauch examined Morales during his annual dental cleaning and again noted Morales's severe periodontitis. (ECF No. 26, ¶ 31; ECF No. 27-1 at 3, 16.) The dental hygienist discussed Morales's gum disease with him and noted that Morales "is aware of his adv. perio." (ECF No. 27-1 at 16.) Dr. Rauch saw Morales for his next annual cleaning on August 8, 2017. (ECF No. 26, ¶ 32; ECF No. 27-1 at 2, 15.) He discussed with Morales deep gaps along his gum lines (called "pocket depths") that could not be treated without eventual extraction of his teeth. (ECF No. 26, ¶ 32; ECF No. 27-1 at 2, 15.)

On February 20, 2018, Morales submitted a DSR stating that "the dentist" knows he has gingivitis and should have treated his condition. (ECF No. 27-1 at 38.) Morales states that he was treating the disease with Colgate toothpaste, which contains triclosan to treat gingivitis; but the canteen stopped carrying Colgate and carries only Crest, which does not have triclosan. (*Id.*) On the DSR Morales asked the dental office "to intervene for," but the sentence is not completed. (*Id.*) Morales states that he intended to write "I need you to intervene," but he has "adult ADHD" that

8

caused him not to complete his sentence. (ECF No. 37 at 3.) The response to Morales's DSR states "ok," but no staff member signed the response. (ECF No. 27-1 at 38.)

On February 25, 2018, Morales sent another DSR to "the HSU Dentist," which Dr. Rauch received the next day. (ECF No. 26, ¶ 5; ECF No. 27-1 at 37.) In the DSR Morales asked "the Dentist" to intervene and provide Colgate toothpaste through the canteen to treat his gingivitis. (ECF No. 27-1 at 37.) Dr. Rauch responded to Morales that he had no authority to determine what toothpastes the canteen would carry, and that that decision is made "by a committee in Madison." (ECF No. 26, ¶ 5; ECF No. 27-1 at 37.) Dr. Rauch admitted, however, that he could have forwarded Morales request to the canteen committee to be reviewed. (ECF No. 37 at 9; ECF No. 39-3 at 5.)

On March 9, 2018, Dr. Rauch received a DSR from Morales stating that the business office at RGCI had told him "to ask the dentist to provide me with a treatment of my gum disease 'gingivitis' because the Colgate will not be sold in the canteen anymore." (ECF No. 26, ¶ 33; ECF No. 27-1 at 36.) Morales requested the Colgate toothpaste or a different treatment for his gum disease. (ECF No. 26, ¶ 33; ECF No. 27-1 at 36.) Dr. Rauch responded that Morales had periodontitis, not gingivitis, and that "[s]tandard of care treatment for your condition—by 'streets' standards—are not offered by the legislators (and taxpayers of Wisconsin[]] to those on state funded clinics." (ECF No. 27-1 at 36.) He informed Morales that the only available treatment under DAI policies was his annual teeth cleaning, which would be available again in August 2018. (*Id.*; ECF No. 26, ¶ 34.) On August 2, 2018,

9

Morales submitted a DSR requesting his annual cleaning, for which Dr. Rauch saw him on August 6, 2018. (ECF No. 26, ¶¶ 35–36; ECF No. 27-1 at 35.)

According to Dr. Rauch, there were no other treatments Morales could have received at RGCI between March and August 2018, including an advanced teeth cleaning, that would have improved the condition of his teeth or reversed his periodontitis. (ECF No. 26, ¶ 37.) This is in part because, under DAI policies, periodontitis and gingivitis do not entitle an inmate to more frequent treatment than an annual dental cleaning. (ECF No. 27, ¶ 42; ECF No. 26, ¶ 40.) The policies allow for only basic restorative treatments of periodontitis. (ECF No. 27, ¶ 43; ECF No. 26, ¶ 38.) According to Dr. Rauch, Morales's condition—periodontitis with large pocket depths—does not respond well to treatment options available under DAI policies. (ECF No. 27, ¶ 44.) Dr. Rauch explained to Morales that teeth can be extracted to reduce the locations from which periodontitis can spread, but Morales would need to request an extraction. (*Id.*) Periodontitis and gingivitis are best prevented by basic oral hygiene and regular dental cleanings. (*Id.*, ¶ 45.) Morales contends that, without access to Colgate toothpaste, he did not have "the right dental medical toothpaste to kill gum disease and periodontitis." (ECF No. 37 at 49.)

Dr. Rauch last saw Morales for his annual cleaning on October 14, 2019. (ECF No. 26, ¶ 41; ECF No. 27-1 at 14, 24.) Between Morales's first visit to Dr. Rauch on June 2, 2015, and his last visit on October 14, 2019, Dr. Rauch extracted three of Morales's teeth as a result of Morales's preexisting severe periodontitis. (ECF No. 26, ¶¶ 42–43; ECF No. 27, ¶ 47.) On October 15, 2019, Morales submitted a DSR

10

requesting an extraction of one or more molars "because of pain, swelling of gums, and possible infection." (ECF No. 27-1 at 24.) Dr. Rauch placed Morales on the "essential" wait list and responded that he would "be called in turn." (*Id.*) Morales asserts that Dr. Rauch extracted two molars on October 24, 2019. (ECF No. 39 at 21–22.)

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

11

## ANALYSIS

**A. Eighth Amendment Claim**

The court reviews Morales's claim regarding the denial of medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see Estelle*, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837).

It is undisputed that Morales has extensive periodontitis dating back to 2010, four years before he arrived at RGCI. Dr. Rauch does not dispute that Morales's severe periodontitis is an objectively serious medical condition and that he was aware of Morales's condition. The only question is whether Dr. Rauch's dental care was "'so

12

blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' [Morales's] condition." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir. 1996)).

It is undisputed that Dr. Rauch has no control over what toothpaste the canteen offers. Morales agrees that Dr. Rauch "was not responsible for the prison canteen discontinues of [sic] the toothpaste Colgate Total" and states that is not his claim. (ECF No. 39 at 9.) Morales instead asserts that "Dr. Rauch was responsible to provide or recommend alternative toothpaste that treated, alleviated, and help to remove the daily plaque buildup which a severe gum disease and periodontitis does to the Plaintiff's mouth." (*Id.*)

Dr. Rauch states that there is no "alternative toothpaste" that could have reversed or cured Morales's severe periodontitis. Dr. Rauch could have submitted Morales's complaint about Colgate toothpaste to the canteen committee in Madison. (Morales also could have sent his request for Colgate toothpaste to the committee.) But Dr. Rauch states, and Morales does not adequately dispute, that toothpaste would not have treated or alleviated Morales's advanced periodontitis. Dr. Rauch suggests that proper dental hygiene helps prevent and slow the spread of gum disease like gingivitis. But Morales's gum disease had progressed to periodontitis, a severe form of gum disease that no toothpaste can cure, as Morales insists. The only treatment Dr. Rauch could provide at RGCI to treat Morales's periodontitis was extracting his affected teeth and educating Morales on proper dental hygiene to slow

13

the spread of his gum disease. It was Morales's responsibility to practice diligent self-care to prevent the spread of his periodontitis, to the extent slowing it was possible.

Although Morales insists that the Colgate toothpaste would have worked more effectively to combat his advanced periodontitis, he fails to cite any evidence for that proposition. Morales's "argument alone is insufficient to avoid summary judgment." *Cooper v. Haw*, 803 F. App'x 942, 946 (7th Cir. 2020); *see also Hoeft v. Kasten*, 691 F. Supp. 2d 927, 931 (W.D. Wis.), *aff'd*, 393 F. App'x 394 (7th Cir. 2010) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("Although plaintiff provided sufficient *allegations* in his complaint to state an Eighth Amendment conditions of confinement claim, he has failed to produce sufficient *evidence* to defeat defendant's summary judgment motion on that claim."). Morales submitted a study from Colgate that states Colgate Total toothpaste is "safe and effective in helping to prevent gingivitis." (ECF No. 39-1 at 20.) It is undisputed that proper dental care may help prevent gum disease generally. But the study says nothing about treating or curing periodontitis.

Morales's real dispute is with the amount of dental care offered at RGCI. But that dispute is with DAI policy and not with Dr. Rauch, who it is undisputed has no say in creating or implementing DAI policies. Even so, inmates are not "entitled to demand specific care," nor are they "entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Dr. Rauch provided Morales with the treatment available under DAI policy for Morales's severe periodontitis. That may not have been the best care that money could buy, but neither was it "blatantly

14

inappropriate as to evidence intentional mistreatment." To the extent Morales asserts that Dr. Rauch failed to follow DAI policy, Dr. Rauch may not be held liable for any such failure. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)) (explaining that § 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation[s] and . . . practices'").

The undisputed evidence shows that Dr. Rauch is not responsible for determining what toothpaste is offered at the RGCI canteen. Even if he were, or even if he inquired about the Colgate toothpaste Morales requested, no toothpaste or other available treatment at RGCI would have reversed or cured Morales's advanced periodontitis at the time he arrived at RGCI. Because the undisputed evidence shows that Dr. Rauch provided the only treatment available to Morales at RGCI for his severe periodontitis, he was not deliberately indifferent to Morales's condition and is entitled to judgment as a matter of law.

In opposing Dr. Rauch's summary judgment motion Morales also complains about dental treatment he received in October 2019. (ECF No. 39 at 21–22.) But this lawsuit addresses Morales's claims about Colgate toothpaste from February and March 2018, which claims the court screened and allowed him to proceed with in January 2019. "A plaintiff cannot add additional claims through arguments made in opposing summary judgment." *Messner v. Calderone*, 407 F. App'x 972, 974 (7th Cir. 2011) (citing *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir.

15

2009), and *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004)). If Morales wishes to proceed on claims involving his dental care in October 2019, he must file a new lawsuit on those claims. The court will not address these new allegations.

### B. Qualified Immunity

Dr. Rauch asserts he is entitled to qualified immunity. (ECF No. 25 at 14–16.) Because the court is granting summary judgment to Dr. Rauch on the merits, it need not address the question of qualified immunity. *See Sierra-Lopez v. Cty.*, No. 17-CV-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and *Antepenko v. Domrois*, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

### C. State Law Claim

The court permitted Morales to proceed on a state law claim that Dr. Morales provided negligent dental care. Under Wisconsin law, dental negligence is "the failure of a dental professional to 'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances.'" *Sanchez-Torres v. Smith*, No. 13-C-0172, 2015 WL 1097387, at *7 (E.D. Wis. Mar. 11, 2015) (citing *Sawyer v. Midelfort*, 595 N.W.2d 423, 435 (Wis. 1999), and *Schuster v. Altenberg*, 434 N.W.2d 159, 161–62 (Wis. 1988)). The elements of a negligence claim in Wisconsin are 1) a duty of care owed by the defendant, 2) breach of that duty, 3) causation, and 4) injury. *Nichols v. Progressive N. Ins. Co.*, 746 N.W.2d 220, 225 (Wis. 2008). The plaintiff also generally must present expert testimony to establish the standard of care required in cases alleging medical

16

malpractice. *Sanchez-Torres*, 2015 WL 1097387, at *7 (citing *Carney–Hayes v. Nw. Wisconsin Home Care, Inc.*, 699 N.W.2d 524 (Wis. 2005)).

Morales concedes that he has not presented expert testimony about the proper standard of care and requests that the court appoint an expert. (ECF No. 39 at 23.) It was Morales's duty to provide evidence establishing the requisite standard of care and that Dr. Rauch's care fell below that standard. He did not provide that evidence and offers nothing to show that Dr. Rauch violated a standard of care owed to Morales. The evidence shows instead that Dr. Rauch provided appropriate care under DAI standards and policies. The court will decline Morales's request and will grant summary judgment to Dr. Rauch on Morales's negligence claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Morales's motion for summary judgment (ECF No. 38) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 24) is **GRANTED** and this case is **DISMISSED**. The clerk shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an

extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I may not extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 28th day of July, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

18

Case 2:18-cv-01967-WED   Filed 07/28/20   Page 18 of 18   Document 43